IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                              *
EDWARD G. SHLIKAS,
                              *
     Plaintiff,
                              *
        v.                        CIVIL NO.: WDQ-06-2106
                              *
SALLIE MAE, INC., ET AL.,
                              *
     Defendants.
                              *
```

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Edward Shlikas sued Sallie Mae, Inc., Hemar Insurance
Corporation of America, Great Lakes Higher Education Guaranty
Corporation ("Great Lakes"), Arrow Financial Services, Pioneer
Credit Recovery, Inc. ("Pioneer"), Diversified Collection
Services, Inc., OSI Education Services, Inc., Jeffrey A. Carlino
("Carlino"), Goldberg Segalla LLP, United States Department of
Education ("DOE"), United States Department of the Treasury, and
Maryland State Comptroller of the Treasury for harassment,
infliction of emotional distress, invasion of privacy, violation
of his due process rights and violations of the Federal Fair Debt
Collection Act and Maryland Consumer Debt Collection Act.
Shlikas also challenges the constitutionality of Section 484A of
the Higher Education Act of 1965 ("HEA").[1]

---

[1] 20 U.S.C. § 1091a (1998).  DOE also raises the
constitutionality of Section 488A of the Higher Education Act, 20

Pending are Shlikas's motions for default judgment, clarification, extension of page length and leave to file a surreply, and DOE's motion to dismiss.  For the following reasons, Shlikas's motion for default judgment and motion for leave to file a sur-reply will be denied, and Shlikas's motions for clarification and extension of page length, and DOE's motion to dismiss will be granted.

I.    Background

Between January 1989 and December 1996, Shlikas obtained five student loans totaling $29,125, which he has failed to repay.[2]  Shlikas alleges that he paid or substantially paid these loans. Pl.'s Resp. Mot. to Dismiss at 12.

On June 26, 2006, Shlikas received a letter from USAF advising him that under 20 U.S.C. § 1095a, it intended to garnish his wages.  *Id.* Ex. 22.  Shlikas filed a written objection, and

_____

U.S.C. § 1095a (2006), and the Treasury Offset Program, 31 U.S.C. 3716 (2004).  Although not specifically referenced in Shlikas's Amended Complaint, the provisions pertain to his due process claims and will be addressed by the Court.

[2] The loans were guaranteed by USAF and Great Lakes, non-profit organizations that provide loan guarantees to lenders. DOE's Mot. to Dismiss at 2.  The DOE has reinsured these loans under the Federal Family Education Loan Program ("FFELP") of Part B of the HEA.  20 U.S.C. § 1071 *et seq* (2006).  Under its reinsurance commitment, the DOE reimburses the Guarantor for its losses in paying default claims to lenders.  *Id.* § 1078(c). After the DOE has paid its federal reinsurance commitment, the HEA requires the guarantor to pursue collection of the debt and remit payment to the DOE.  *Id.* § 1078(C)(2)(A); 34 C.F.R. §§ 682.404(g), 682.410(b) (2006).

on July 16, 2006, he mailed a letter to USAF and the other named Guarantors requesting certain documentation.  Pl.'s Resp. Mot. to Dismiss at 15-17; *Id.* Ex. 25.  Great Lakes notified Shlikas on August 4, 2006 that DOE held a claim against him for a defaulted student loan, and that DOE intended to withhold his federal income tax refunds, unless he began making payments.[3]  *Id.*  On August 11, 2006, Shlikas sued the Defendants.

On August 21, 2006, Shlikas received notice from Goldberg Segalla of his wage garnishment hearing scheduled for September 7, 2006, before Hearing Official Carlino at the corporate headquarters of Pioneer, in Arcade, New York.  Pl.'s Resp. Mot. to Dismiss Ex. 32.  On September 1, 2006, Shlikas requested a stay of that hearing pending final judgment in his civil actions and a change of venue.  *Id.* Ex. 33.  Carlino denied both requests, but rescheduled the hearing for September 18, 2006.[4]  Shlikas did not attend the hearing held on September 18, 2006, and Carlino ordered garnishment of Shlikas's wages.  On October 10, 2006, Shlikas sought to enjoin USAF, Pioneer, and Carlino from enforcing the Wage Withholding Administrative Hearing

---

[3] On February 13, 2007, Shlikas received notice that his federal tax refund of $888 had been applied to debts he owed.

[4] In response, Shlikas moved for dismissal of the hearing because Carlino lacked jurisdiction; requested a 60 day continuance so he could adequately prepare; sought joinder of additional parties; and sought to file a counterclaim against all Defendants.  Carlino denied these requests.

Decision.

## II.  Analysis

### A.    Motion to Dismiss[5]

### 1.    Standard of Review

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).

If the court considers matters outside the pleading on a Rule 12(b)(6) motion, it shall treat the motion as one for summary judgment, under Rule 56, and provide all parties a "reasonable opportunity to present all material made pertinent to such a motion." Fed. R. Civ. P. 12(b).  "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985).

Under Rule 56(c), summary judgment is appropriate when there

---

[5] Shlikas filed a motion for extension of the page length for his opposition to Defendant's motion to dismiss.  *See* Paper No. 103.  Local Rule 105(3) of the United States District Court for the District of Maryland provides that "unless otherwise ordered by the Court, memoranda in support of or in opposition . . . shall not exceed fifty pages."  Since the DOE did not object and the Court finds no prejudice, Shlikas's motion will be granted.

is no genuine issue of material fact, and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);
*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In
considering a motion for summary judgment, "the judge's function
is not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial."  *Id.* at 249.  Thus, "the judge must ask . . . whether a
fair-minded jury could return a verdict for the [nonmoving party]
on the evidence presented."  *Id.* at 252.  The court must also
view any inferences drawn from the underlying facts "in the light
most favorable to the party opposing the motion."  *Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

    2.   Discussion

    a.   The Constitutionality of Section 488A of the HEA

    Shlikas contends that § 488A of the HEA is unconstitutional
because it: (1) vests judicial power in non-Article III judges;
(2) violates the Due Process Clause by allowing a hearing officer
to conduct a hearing without giving the alleged debtor adequate
notice or an opportunity to be heard; (3) denies the alleged
debtor the right to a jury trial; and (4) does not provide for
judicial review of a hearing official's final decision.[6]

---

    [6] Shlikas raises several other arguments that challenge the
constitutionality of § 488A of the HEA.  Those claims are without
merit and will not be addressed by the Court.

(1)  Judicial Power of Non-Article III Judges

Shlikas contends that Congress unconstitutionally vested Hearing Official Carlino with the power to adjudicate his wage garnishment claim.  In support of his contention, Shlikas relies on Section One of Article III[7] and *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), which held that a grant of jurisdiction to bankruptcy judges violated Article III of the Constitution.

Shlikas's reliance on *Northern Pipeline* is misplaced because the decision merely defined Congress's power to use administrative agencies to adjudicate certain claims.  *See* 458 U.S. at 77-80.  Moreover, unlike the statute in *Northern Pipeline*, § 488A of the HEA does not vest all "essential attributes" of judicial power in hearing officials.  *Id.* at 85. The HEA makes factual determinations and orders subject to review by Article III courts.  By contrast, the unconstitutional subject-matter jurisdiction of the bankruptcy courts in *Northern Pipeline* encompassed *all* civil proceedings arising under title 11 and attempted to vest the powers of the district court in the bankruptcy courts.  *Northern Pipeline*, 458 U.S. at 85.

"[N]either [the U.S. Supreme Court] nor Congress has read

---

[7] "The judicial power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  U.S. Const. art. 1, § 1.

the Constitution as requiring every federal question arising under the federal law . . . to be tried in an Article III court before a judge enjoying life tenure and protection against salary reduction." *Palmore v. United States*, 411 U.S. 389, 407 (1973). Congress may, under Article I, vest decisionmaking authority in tribunals that lack the attributes of Article III courts. *See, e.g.*, *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985) (Board of Veterans' Appeals); *Crowell v. Benson,* 285 U.S. 22 (1932) (Deputy Commissioner of Employees' Compensation Commission). Thus, "[m]any matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 583 (1985) (*citing Heckler v. Chaney*, 470 U.S. 821, 837-838 (1985)); *United States v. Erika, Inc.*, 456 U.S. 201, 206 (1982) (no review of Medicare reimbursements); Henry P. Monaghan, *Marbury and the Administrative State*, 83 Colum. L. Rev. 1, 18 (1983).

Congress specified in § 488A of the HEA that disputed wage garnishment orders should be reviewed by hearing officials when a hearing is requested. Those dissatisfied with the hearing official's decision may seek judicial review. The judicial powers granted to hearing officials under § 488A of the HEA does not offend Article III of the Constitution.

7

(2)  Due Process Rights

Shlikas claims that his due process rights were violated because he was not given adequate notice and a meaningful opportunity to be heard before garnishment of his wages.  Pl.'s Resp. Mot. to Dismiss at 55.  Shlikas argues that he was given only nine days to determine the procedures of the hearing and prepare his defense, and adequate evidence was not presented that he owed the debt.  *Id.* at 58-59.  Since he was not present at the wage garnishment hearing, Shlikas also contends that he did not have an opportunity to argue the facts and evidence to prove that he does not owe the debt.  *Id.* at 59.

Before taking the property of a person, due process requires the Government to provide notice and an opportunity to be heard. *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1439 (4th Cir. 1992).  Notice and hearing requirements are reviewed in light of:

> "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used; (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

A fundamental requirement of due process in any proceeding is notice "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S 306, 314 (1950).  The notice provision of 20 U.S.C. § 1095a(a)-(b) requires creditors to send written notice to a debtor's last known address 30 days before the garnishment and include the amount due and an explanation of rights.  *Id.* § 1095a(a)(2); 34 C.F.R. § 682.410(b)(1)(i)(B)-(L)(2006).  Shlikas acknowledges that he received notice of the proposed wage garnishment on June 26, 2006, which provided ways to resolve the matter, including requesting a hearing, submitting documentation, and remitting the balance due.  Shlikas requested an in-person hearing and proof of the debt from Pioneer, and submitted a written statement objection to the wage garnishment. Shlikas's requests were resolved and an in-person hearing scheduled for September 18, 2006.

The fundamental right of due process is also the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).  If the debtor requests a pre-deprivation or post-deprivation administrative hearing, one will be conducted, but the guarantor or its agents may issue a garnishment order without a pre-deprivation hearing. 20 U.S.C. § 1095a(b).  When a hearing is held, the final decision must be issued no later than 60 days after the request was filed. *Id.*

Shlikas contends that the Government violated his due

process rights when it conducted the wage garnishment hearing in

his absence.  The notification Shlikas received specified that he

could participate in a hearing by telephone or written statement.

 *See* Pl.'s Resp. Mot. to Dismiss Ex. 22.  Shlikas requested a

change of venue, arguing that scheduling the hearing in Arcade,

New York--located 640 miles away--was an inconvenient forum.

Carlino reviewed and denied Shlikas's request.  Shlikas's

disagreement with Carlino's decision does not excuse his absence

or establish a due process violation.

(3)  Right to Jury Trial

The Seventh Amendment provides that "in suits at common law,

where the value in controversy shall exceed twenty dollars, the

right of trial by jury shall be preserved."  U.S. Const. amend.

VI.  Shlikas argues that this is a common law contract and tort

suit, thus his right to a jury trial should be preserved.  Since

§ 1095a does not provide for a jury trial, Shlikas asserts that

the statute is unconstitutional.

At issue is a statutory proceeding to determine if wage

withholding is appropriate, rather than a suit at common law.

The Seventh Amendment has not rendered Congress powerless "to

create new public rights and remedies by statute and commit their

enforcement, if it chose, to a tribunal other than a court of law

such as an administrative agency."  *Atlas Roofing Co., Inc. v.*

*Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 460

10

(1977).  Moreover, the Seventh Amendment "was never intended to establish the jury as the exclusive mechanism for factfinding in civil cases." *Id.* at 459.  Accordingly, adjudication of Shlikas's case by an administrative agency was lawful.

(4)  Right to Judicial Review

Shlikas also contends that § 1095a is unconstitutional because it has no statutory provision for judicial review, and Congress did not intend for it to provide for judicial review. According to Shlikas, the objective of § 1095a is to create a federal right in favor of private guaranty agencies and their agents, which makes it easier to withhold an alleged debtors wages without judicial interference.  As the statute does not provide for judicial review, and it is not implied from legislative intent, Shlikas argues that the statute is unconstitutional.

The Administrative Procedure Act ("APA") provides that "any person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review." 5 U.S.C. § 702 (2000).  The APA provision for judicial review applies "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Id.* § 701(a).  "Whether and to what extent a particular statute precludes judicial review is determined not only from its

express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 346 (1984).

Section 1095a is silent whether judicial review of wage garnishment orders is prohibited.[8]  In the absence of an express prohibition, Shlikas bears the burden of overcoming the strong presumption that Congress did not intend to prohibit judicial review of the decision. *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975).  Shlikas stresses that Congress did not intend to provide judicial review, but cites no authority in support of this contention.

Section 1095a is comprehensive. It details the procedure the guaranty agency must use to effect garnishment and expressly states the notice required, how a hearing is obtained, and how wage garnishment determinations are to be made.  20 U.S.C. §§ 1095a(a)-(c).  Allowing an agency to garnish an individual's wages without judicial review of the adequacy of the procedures used or the appropriate amount of garnishment would give the agency unfettered discretion.  Shlikas has not demonstrated--and

---

[8] DOE recognizes that the statute contains no explicit authorization of judicial review, but argues that it is implied because a similar debt collection statute contains such an authorization.  *See* 31 U.S.C. § 3720D (2000).  Congress's silence may be an indication that Congress did not intend to provide judicial review under § 1095a.

the Court does not find--that Congress intended to give that discretion.

   b.   Constitutionality of Section 488A of the HEA

   Shlikas contends that 20 U.S.C. § 1091a is unconstitutional because it provides no statute of limitations on pursuing defaulted student loans.  As a result, Shlikas claims that he has been subjected to inflated collection costs and penalties and forced to defend himself in numerous hearings.

   In 1991, Congress expressly determined that no statute of limitations would be applicable to the federal government's collection of defaulted student loans.[9]  20 U.S.C. § 1091a. Accordingly, absent undue hardship or oppression, Congress may constitutionally require collection of long-defaulted student loans.  *United States v. Charles*, 240 F. Supp. 2d 488, 491 (M.D.N.C. 2002); *United States v. Dwelley*, 59 F. Supp. 2d 115 (D. Me. 1999).  Shlikas has not indicated that making payments would cause undue hardship or be oppressive; thus, his guarantors may seek payment.  *Charles*, 240 F. Supp. 2d at 491; *see also United States v. Singer*, 943 F. Supp. 9 (D.D.C. 1996).

   c.   Constitutionality of the Treasury Offset Program

   Shlikas contends that by offsetting his tax refund, the DOE

_____

   [9] The statute provides that "notwithstanding any other provision of statute, regulation, or administrative limitation, no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken."  20 U.S.C. § 3(a).

deprived him of his property without due process.  Due process is violated if the Government deprives one of a property right without providing notice and an opportunity to be heard.  *Linton*, 964 F.2d at 1439.  The notice must be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

Shlikas argues that the notice he received "was not of such a nature as reasonably to convey the required information and afford [him] reasonable time to make [an] appearance."  Pl.'s Resp. Mot. to Dismiss at 66.  Shlikas also argues that the form entitled "Request for Review" did not provide him an opportunity to be heard because the language suggested that he only had the option to have Great Lakes review his claim.  *Id.* at 66-67. Shlikas asserts that a reasonable person under the circumstances would have concluded that this notice form was to request a one-sided hearing and not a confrontational two-sided hearing.  *Id.* at 67.  Shlikas contends that based on the allegedly deceptive language of the notice form he did not request a hearing, and his due process rights were violated.

The administrative offset provisions of the Debt Collection Act afford notice and other procedural protections when the government undertakes to collect a debt by administrative offset. *See* 31 U.S.C. § 3716(a)-(h) (2004).  An agency may collect only

14

after giving the debtor written notice of the type and amount of the claim, an opportunity to inspect and copy records related to the claim, an opportunity for a review within the agency of the decision, and an opportunity to make a written agreement to repay the amount of the claim. *Id.* § 3716(a)(1)-(4).  Shlikas acknowledges that he received a letter from Great Lakes notifying him that the DOE "holds a claim against him of an impending offset of his Federal income tax refund." *See* Pl.'s Resp. Mot. Dismiss Ex. 31.  The notice informed Shlikas of the approximate debt owed and ways to avoid the offset, and advised him of his right to a hearing upon his request.  The notice also adequately advised Shlikas of the opportunity to request a hearing.  Conspicuously placed in the middle of the notice was a section that advised Shlikas of three choices for claim review.  The notice was appropriate.

    B.    Motion for Leave to File SurReply

    Shlikas claims that he should have an opportunity to answer and address the arguments raised in DOE's Reply.  Shlikas has failed to establish a constitutional claim against the Defendants.  The Agency's Reply provides no new assertions that require a response, thus a supplemental brief by Shlikas would not aid the Court.  Accordingly, Shlikas's motion for leave to file a surreply will be denied.

C.   Default Judgment Against Jeffery A. Carlino

On October 10, 2006, Shlikas sued Carlino, and on November 27, 2006, he mailed the summons and Amended Complaint.  However, as of April 2, 2007 Carlino has not answered.  As Carlino has failed to defend the suit, Shlikas contends that under Rule 55 a default judgment should entered against Carlino.

Under Rule 4(i)(1)(A) and (B), in addition to the agency or agents being served, the plaintiff must serve the United States Attorney's office for the district in which the action is brought, and the United States Attorney General.  Carlino is a Hearing Official employed by the DOE and thus an agent of the United States.  On December 8, 2006 DOE was served, but as of April 24, 2007, neither the Office of the United States Attorney nor the Attorney General has been served in this matter.  Shlikas has not effected service on Carlino; thus Shlikas's motion for default judgment will be denied.[10]

III. Conclusion

For the above stated reasons, Shlikas's motion for default judgment and motion for leave to file a surreply will be denied, and Shlikas's motion for clarification[11] and motion for extension

---

[10] Under Rule 55(e) a judgment of default may not be entered against the United States or an officer "unless the claimant establishes a claim or right to relief by evidence satisfactory to the court."  Shlikas has not demonstrated that such relief should be granted.

[11] The revision is reflected in ¶ 5 of the order.

16

of page length, and DOE's motion to dismiss will be granted.

November 30, 2007                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge