IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

EDWARD G. SHLIKAS,

    Plaintiff,

    v.                         CIVIL NO.: WDQ-06-2106

SALLIE MAE, INC, *et al.*,

    Defendants.

MEMORANDUM OPINION

Edward G. Shlikas, *pro se*, sued Sallie Mae, Inc. and others for violating the Federal Fair Debt Collection Practices Act ("FDCPA"),[1] the Maryland Consumer Debt Collection Act ("MCDCA"),[2] and other claims. After several rounds of dispositive motions, the Court entered judgment for all defendants except Arrow Financial Services, LLC ("AFS"); Pioneer Credit Recovery, Inc. ("Pioneer"); and Diversified Collection Services, Inc. ("Diversified").[3] The sole surviving claims are for violations

---

[1] 15 U.S.C. § 1692 *et seq*.

[2] Md. Code Ann., Comm. Law § 14-201 *et seq*.

[3] In this Memorandum Opinion, AFS, Pioneer and Diversified will be referred to collectively as "the Defendants."

1

of the FDCPA and MCDCA.[4] Pending are the Defendants' motions *in limine* and Shlikas's motion to compel.

I. Background

The background of this case is discussed at length in the Court's May 4, 2009 Memorandum Opinion, Paper No. 190, and will not be restated here. In brief, this case involves Shlikas's ongoing effort to avoid repaying $29,125 in student loan debt incurred in the early 1990s. In this and other cases,[5] Shlikas has sued the Department of Education and various loan holders, guarantors, servicing agents, and debt collection agencies on theories ranging from violation of procedural due process to intrusion upon seclusion. After several rounds of dispositive motions in this case, the only remaining issues for trial are whether (1) AFS, Pioneer and Diversified--debt collection agencies--violated the FDCPA and (2) Pioneer violated the MCDCA. Shlikas alleges that each of the Defendants attempted to collect his debt by making numerous telephone calls to him, his mother, and his employer.[6] He alleges that the Defendants violated the

---

[4] The FDCPA claim is pending against AFS, Pioneer, and Diversified; the MCDCA claim is pending only against Pioneer.

[5] *See, e.g.*, *Shlikas v. SLM Corp.*, WDQ-09-2806.

[6] He alleges that AFS made 186 calls in seven months; Pioneer made 64 calls in three months; and Diversified made 11 calls in one month.

FDCPA because the calls were made (1) with the intent to annoy, abuse or harass him and (2) without "meaningfully" disclosing the caller's identity.[7] He alleges that Pioneer violated the MCDCA by calling him too frequently.[8]

The Defendants have moved to exclude evidence that they expect Shlikas will attempt to introduce at trial. Paper No. 208.

II. Analysis

    A. The Defendants' Motions *in Limine*

        1. Claims Previously Dismissed by the Court and the Court's Denial of Summary Judgment

The Defendants' seek to preclude Shlikas from referring to his claims for Harassment, Intentional Infliction of Emotional Distress, Invasion of Privacy, Intrusion Upon Seclusion,

---

[7] 15 U.S.C. § 1692d prohibits "[a] debt collector" from, *inter alia*, "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number" and "[p]lac[ing] . . . telephone calls without meaningful disclosure of the caller's identity."

[8] Section 14-202(6) of the Commercial Law Article of the Maryland Code prohibits debt collector from "[c]ommunicating with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor." In its May 4, 2009 Memorandum Opinion, the Court held that there was a genuine issue of material fact about whether Pioneer had harassed Shlikas by calling him too frequently. Paper No. 190 at 14-15. The Court held that the frequency of the calls made by AFS and Diversified was, as a matter of law, insufficient for liability under MCDCA. *Id*. at 15 n.19.

Unreasonable Publicity, Violation of Due Process, and Violations of the Maryland Consumer Debt Collection Act. They also contend that he should be precluded from mentioning the fact that the Court did not grant summary judgment for the Defendants on the claims that will be presented at trial.[9]

The request to exclude evidence of Shlikas's dismissed claims cannot be resolved until trial, as there may be evidence that is relevant to the FDCPA and MCDCA claims and to the dismissed claims. Moreover, the Court cannot assess the relative probativeness and prejudice of such evidence in the abstract. The Defendants may object to this evidence if and when Shlikas seeks to introduce it.

The request to preclude reference to the Court's denial of summary judgment will be granted. This evidence is, at best, minimally relevant, and may confuse the jury, which could construe the Court's denial of the Defendants' motion for summary judgment as an endorsement of the merits of Shlikas's claims.

        2. Statements About Entities Which Are No Longer
           Parties to the Action

The Defendants also move to preclude Shlikas from introducing evidence about former co-defendants, arguing that

---

[9] Shlikas has confirmed that he would likely offer this evidence. Opp. 2-3.

such references would be irrelevant and unduly prejudicial.[10] Again, the Court cannot assess the relevancy or prejudice of this evidence in the abstract. There may be evidence about former co-defendants that is relevant and whose probativeness is not outweighed by prejudice. The Defendants may object if and when Shlikas seeks to introduce this evidence.

### 3. Evidence that Defendants Failed to Provide Discovery or Destroyed Evidence

The Defendants next move to preclude Shlikas from offering evidence that they (1) did not respond to his First Set of Interrogatories and First Set of Requests for Production of Documents and (2) destroyed documents.[11] In opposition, Shlikas

---

[10] Shlikas intends to offer such evidence. Opp. 4-5.

[11] Shlikas states that he will likely offer evidence of the Defendants' failure to respond, but would only offer evidence of document destruction if the Court grants his motion to compel, filed on July 28, 2008. Paper No. 162. As the Defendants note, under the April 13, 2007 Scheduling Order, discovery closed on November 22, 2007. Paper No. 78. On November 16, 2007, Shlikas moved to amend the Scheduling Order to provide another 120 days for discovery. Paper No. 121. On May 5, 2008, Shlikas sent the Defendants his First Set of Interrogatories and Requests for Document Production, to which the Defendants did not respond because they were untimely.

The Court denied Shlikas's motion to amend the Scheduling Order on June 5, 2008. Paper No. 158. In the Memorandum Opinion denying the motion, the Court also addressed the Defendants' motion to dismiss and for Rule 37 Sanctions for *Shlikas's* failure to participate in discovery. *Id*. Although the Court found that "Shlikas's conduct suggest[ed] bad faith, prejudice to the Defendants, and a lack of respect for court-imposed orders," it did not dismiss the case or sanction him

mostly reargues his motion to compel, which the Court will deny; he does not articulate a theory of relevance for this evidence. Accordingly, the Defendants' motion to exclude this evidence will be granted.

        4. Evidence That the Shlikas's Debt Was Invalid

Shlikas has offered several explanations for his alleged failure to repay his student loans including that (1) the amount of the debt he owes has "been substantially inflated by unlawful collection fees" and (2) he bought insurance for the loans and his creditors were paid off when he defaulted. *See* Opp. 7. The Defendants have moved to exclude evidence relating to the "validity" of Shlikas's debt, by which they apparently mean the

---

because he had not been warned that his failure to participate in discovery could subject him to these consequences. *Id*. at 4. Instead, the Court granted a limited 60-day extension of discovery for the Defendants and ordered Shlikas to submit to deposition and respond to the Defendants' discovery requests. *Id*. at 4-5.

    Apparently believing that this limited extension of discovery for the Defendants reopened discovery--and retroactively rendered his May 5, 2008 interrogatories and documents requests timely--Shlikas filed a motion to compel on July 28, 2008. Paper No. 162. The motion will be denied, as Shlikas's discovery requests were untimely under the Scheduling Order.

fact that Shlikas actually owed the debt they were trying to collect.[12] They contend that such evidence is irrelevant.

Shlikas flatly states that the evidence is relevant, but does not articulate a theory of relevance. He merely states that "these Defendants should not be allowed to harass people regarding this cost and risk they have knowingly and willingly taken, so that they may attempt to extort money from people like [Shlikas]." Opp. 8. He cites--and the Court has found--no authority that the validity or existence of the debt sought to be collected is relevant to whether a Defendant has violated the FDCPA or MCDCA. Accordingly, Shlikas will be not be permitted to introduce evidence that the debt is invalid or that he does not owe it.

> 5. Evidence that the Defendants Spoke to Shlikas's Employer

At various points in this case, Shlikas has alleged that the Defendants called his employer in an effort to contact him about his debt. He alleged that by doing so, the Defendants had violated § 14-202(4) of the MCDCA, which prohibits a debt collector from "contacting a person's employer with respect to a delinquent indebtedness before obtaining final judgment against the debtor." Md. Code Ann., Comm. Law § 14-202(4). In its May 4, 2009, Memorandum Opinion, the Court held that Shlikas had no

---

[12] Shlikas intends to offer this evidence. Opp. 7.

evidence that the Defendants' had contacted the employer "*with respect to an alleged indebtedness*." *Id*. (emphasis added). Thus, the Court granted summary judgment to all the Defendants as to liability under that provision of the MCDCA. Paper No. 190 at 13. Given this, the relevance of the Defendants' having contacted Shlikas's employer is unclear.

In his opposition, Shlikas argues that because the Defendants have not complied with his (untimely) discovery requests, he has not been able to show that the Defendants violated § 14-202(4). Shlikas fails to recognize that this issue was decided on summary judgment; it may not be re-litigated at trial. He does not state how the Defendants' calls to his employer would be relevant to his remaining claims. Accordingly, the Court will exclude evidence of these calls.

> 6. Demonstrative and Other Exhibits Not Already Admitted or Jointly Approved by the Parties

The Defendants seek a ruling prohibiting publication to the jury of any exhibit or demonstrative not admitted into evidence before publication. As this is the standard practice in this Court, the Defendants' request is moot.

7. Evidence, Statements or Arguments About Issues Not Contained in the Pretrial Order

The Defendants' have also moved to preclude Shlikas from referring to matters not discussed in the parties' October 1, 2009 Joint Pretrial Order. Paper No. 202. The Court will deny this motion, as it is vague and overbroad. The Defendants may object to this evidence if and when Shlikas seeks to introduce it.[13]

8. "Committal" Questions During *Voir Dire*

In his October 19, 2009 proposed *voir dire*, Shlikas requests that the Court ask whether any member of the jury panel (1) "feels that the facts could not possibly justify a recovery of [$125,000 in compensatory damages]" or (2) "would be opposed to awarding [$2,260,000.00 in] punitive damages." Paper No. 210 ¶¶ 10,11. The Defendants request that these instructions not be given because "[c]omitting jurors to a large verdict during voir dire [would] unfairly prejudice[] the jury in favor of [Shlikas]." To the extent that this is a motion *in limine*, it will be denied as procedurally improper. The Court is the ultimate arbiter of the questions asked during *voir dire*. The

---

[13] The Court will not micromanage any party's presentation of evidence at trial, but it does expect that the parties will conduct themselves with professionalism and civility. If a party's conduct deviates from that standard, the Court has a variety of options regarding claims and defenses that have been traditionally used to restore courtroom decorum.

Defendants may challenge such questions by objections during *voir dire*.

III. Conclusion

A separate Order follows.

August 25, 2010 _____/s/_____
Date William D. Quarles, Jr.
United States District Judge